UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Vincent Yee, | No. 2:14-cv-02955-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| Sacramento County Main Jail, et al., | |
| Defendants. | |

In this action, plaintiff Vincent Yee alleges two officers of the Sacramento Police Department, Harold Penny and Corey Johnson, wrongfully withheld information about his father Peter Yee's suicide risk when they booked him into the Sacramento County Main Jail in 1998. Peter Yee died by suicide in the jail about two months later. The officers asserted qualified immunity in their final pretrial statement, and the court directed the parties to submit briefs addressing whether the officers were entitled to summary judgment on the basis of that defense. Defs.' Pretrial Statement 3–5, ECF No. 88; Mins., ECF No. 93; *see also* Fed. R. Civ. P. 56(f). The court also appointed counsel to represent Mr. Yee in preparing his brief; he had previously been representing himself. Appointment Order, ECF No. 95. The parties have now submitted their briefs. *See* Defs.' Br., ECF No. 99; Pl.'s Br., ECF No. 102; Defs.' Resp., ECF No. 105. The court now submits the matter without oral arguments and **grants summary judgment to the officers based on their qualified immunity**, as explained below.

In general, summary judgment raises two questions. First, is there a "genuine dispute as to any material fact"? Fed. R. Civ. P. 56(a). Second, if not, is a party "entitled to judgment as a matter of law"? *Id.* Together, the answers to these questions show "whether there is the need for a trial—whether, in other words, there are any genuine issues that can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When a person seeks or opposes summary judgment, it is not enough to simply make an assertion or allegation. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). At summary judgment, factual claims must be accompanied by citations to "particular parts of materials in the record," such as depositions, documents, responses to written discovery, and declarations. Fed. R. Civ. P. 56(c)(1).

In their respective briefs, Mr. Yee and the two officers do not cite depositions, documents, written discovery, declarations or any other parts of the discovery record. *See* Defs.' Br. at 2–3; Pl.'s Br. at 1–2; Defs.' Resp. at 1–3. Nor have they attached any evidence to explain what the evidence would show at trial. Despite the absence of citations to evidence, the parties' descriptions of what happened are largely aligned. As a general rule, parties to a case may "have their case tried upon the assumption that facts, stipulated into the record, were established." *Christian Legal Soc. Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 676 (2010) (quoting *H. Hackfeld & Co. v. United States*, 197 U.S. 442, 447 (1905)) (alterations omitted). The court therefore interprets the parties' briefs as proposed agreements about what would and would not be proven at trial. *See* Defs.' Br. at 2–3; Pl.'s Br. at 1; Defs.' Resp. at 1–3. When those proposals overlap—or when one side has made a claim without objection or contradiction by the other—the court treats the agreement as effective and binding for purposes of summary judgment. The court also resolves inconsistencies, ambiguities and disputes in Mr. Yee's favor. The following story emerges from this approach.

In the Fall of 1998, three Sacramento Police officers responded to reports of a domestic dispute at Peter Yee's home. He was distraught, yelling again and again that he wanted to die, perhaps as many as fifty times. The officers arrested him, suspecting he was guilty of domestic abuse. *See* Cal. Penal Code §§ 273.5(a), (b)(1)–(2). Two of the officers, Penny and Johnson,

took Peter to the Sacramento Main Jail, where he was booked. He did not tell the officers he was suicidal. The officers, in turn, did not suggest to jail staff that Peter was at risk of suicide. They did later note in a report that he had said, "I wanna die." About two months later, while he was still in the Sheriff's Department's custody, Peter hanged himself with a bedsheet, which he could not have done if he had been confined in a cell designed to prevent suicides.

Vincent Yee filed this lawsuit many years later. After pretrial motions and discovery, the only remaining claims are those against the two officers, Penny and Johnson. *See* Order Adopting F&Rs, ECF No. 41; Mins., ECF No. 93. Mr. Yee alleges they were deliberately indifferent to the risk of his father's suicide in violation of the Fourteenth Amendment, and he seeks damages. *See, e.g.*, Sixth Am. Compl. at 23–24, ECF No. 35. Officers Penny and Johnson argue they are legally immune to these claims. Defs.' Pretrial Statement 3–5. Under the doctrine of qualified immunity, which they assert, they are immune unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiff can overcome the officers' assertion of immunity by proving, first, they violated a constitutional right, and second, the constitutional right was "clearly established" at the time of the violation. *See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam).

District courts may begin with either part of this two-part test. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). It is "often beneficial" to begin with the first part, i.e., whether a defendant violated a constitutional right. *Id.* Doing so often "promotes the development of constitutional precedent." *Id.* In this case, no guidance or clarity would be productive. In 1998, when Peter Yee died, the Ninth Circuit had prescribed a different legal test for claims of deliberate indifference than it does today. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019) (citing *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc)). Developing the now-abandoned legal test "would serve little purpose." *Id.* at 602. Here, it is better to begin with the second part of the qualified immunity test: did the officers' conduct violate clearly established law? That is, in 1998, would it have been "sufficiently clear" to "every reasonable official" that the officers' actions violated the Fourteenth Amendment?

*Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

The court must answer this question "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. 223. In *Saucier v. Katz*, for example, a protester claimed an officer had used excessive force when he "grabbed" him from behind, took his banner, rushed him away from where the Vice President was about to speak, took him to a military van, and "shoved" him inside. *Id.* at 198. The protester could not rely solely on the "general proposition" that objectively unreasonable force violates the Fourth Amendment. *See id.* at 201–02 (citing *Graham v. Connor*, 490 U.S. 386 (1989)). The Court also found it necessary to consider the context, such as the officer's "duty to protect the safety and security of the Vice President of the United States from persons unknown in number." *Id.* at 209.

In this case, Officer Penny's and Officer Johnson's constitutional obligations were established in a broad sense at the time of Peter Yee's arrest and booking. In 1979, the Supreme Court held that the Fourteenth Amendment prohibits states from punishing pretrial detainees like Peter Yee, who by definition have not been adjudicated guilty of a crime. *See Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979). In 1988, the Ninth Circuit held that this rule prohibited jail officials from exhibiting deliberate indifference to a pretrial detainee's "serious medical needs." *See, e.g.*, *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1461 & n.2 (9th Cir. 1988), *judgment vacated*, 490 U.S. 1087 (1989), *reinstated*, 886 F.2d 235 (9th Cir. 1989), *and overruled, Castro*, 833 F.3d 1060. And by the early 1990s, several federal courts of appeals had held that mental health conditions could be "serious medical needs." *See, e.g.*, *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994); *Hall v. Ryan*, 957 F.2d 402, 406 & n.6 (7th Cir. 1992); *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991); *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 669 (3d Cir. 1988), *abrogated in part on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). As a result, at the time of Peter Yee's death, it was clearly established that the Constitution prohibited jail officials from ignoring a pretrial detainee's heightened suicide risk. *See, e.g.*, *Cabrales*, 864 F.2d at 1457–58, 1461; *Hall*,

957 F.2d at 406; *Torraco*, 923 F.2d at 235–36.  A plaintiff could prevail under a constitutional claim of this type by showing (1) an official was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and (2) the official "actually drew the inference." *Horton*, 915 F.3d 592 (quoting *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010)).

For example, in 1988, the Ninth Circuit upheld verdicts against Los Angeles County and a local jail commander after a man committed suicide in the county jail while he was awaiting a trial on burglary charges. *See Cabrales*, 864 F.2d at 1456–57.  The man had attempted suicide not long before his death, and jail officials knew he had suffered from a psychotic disorder, but they held him in isolation without observation, where he hanged himself. *See id.* at 1457.  A few years later, in 1992, the Seventh Circuit denied qualified immunity to jail officials who had allegedly withheld treatment from a pretrial detainee with a history of suicide threats, who later attempted to hang himself in his cell. *See Hall*, 957 F.2d at 403–04, 405–06.  It was unclear what the jail officials had known about the man's history of suicide threats and attempts, a key question to answer when deciding whether they were deliberately indifferent, and so the court denied summary judgment. *See id.* at 405–06.

In contrast with the defendants in those and other similar cases, Officers Penny and Johnson were not jail officials.  Mr. Yee faults them not for ignoring the risk of his father's suicide while he was in their *own* custody, but rather for not disclosing to *others* what they knew.  The question, then, is whether a reasonable officer—knowing what Penny and Johnson knew and given the law at the time—would have understood that saying nothing to jail staff about Peter Yee's mental health put him at such a substantial risk of harm that the Constitution demanded some warning or disclosure to the Sacramento County Main Jail when he was booked.  On that question, Mr. Yee has cited no clearly established law predating 1998, and the court has found none.

In fact, this uncertainty persisted even in 2012, many years after Peter Yee's death, when two other police officers found themselves in a situation very much like the one Officers Penny and Johnson faced.  Like Penny and Johnson, these two other officers had arrested a man whose

5

behavior suggested he was suffering from a mental health condition.  *See Horton*, 915 F.3d at 596.  The young man told one of the officers he was "feeling anxious" and "would really like to speak to someone."  *Id.* at 597.  His mother also told the other officer the young man had recently been hospitalized for risk of suicide.  *See id.*  Twenty-seven minutes after that warning, officers found him in his cell, suffering from the effects of an unsuccessful suicide attempt.  *Id.* at 598.  The man survived, but he suffered severe and permanent injuries.  *Id.*  In the civil rights case his family later brought on his behalf, the Ninth Circuit found no clearly established law to overcome the two officers' assertion of qualified immunity.  *See id.* at 599–601.  The only potentially comparable cases had been decided in 2009 and 2010.  *See id.* (discussing *Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010), *overruled by Castro*, 833 F.3d 1060, and *Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010), *vacated*, 563 U.S. 915 (2011), *and reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011)).  The circuit's opinion in *Horton* thus demonstrates that no clearly established law required more from Officers Penny and Johnson in 1998.

In reaching this conclusion, the court is not finding affirmatively that Officers Penny and Johnson complied with their constitutional obligations.  The Constitution may very well have demanded more of them.  But if it did, that conclusion was not "clearly established" under the strict standard the Supreme Court has set.  It is that strict standard this court must apply.  While the two officers are not exonerated, they are immune to the claims in Mr. Yee's complaint.  The court **grants summary judgment to the defendants and closes this case**.

IT IS SO ORDERED.

DATED:  March 3, 2023.

CHIEF UNITED STATES DISTRICT JUDGE